*440 The opinion of the Court was delivered by
Huston, J.
The prisoner is brought before this Court, and his discharge is asked for, because, immediately after sentence was passed, he was confined in the prison on Walnut-Street; is now confined in the prison on Mulberry (commonly called Arch) Street, where, it is said, he is not kept at hard labour; and because, it is said, he may be removed to what is called the Eastern Penitentiary, where he will be kept at hard labour separate and apart from the other prisoners. With what is to be done, we have in this case, at present, nothing to do; inquiry is, in such a case as this, confined to, whether the prisoner is illegally detained.
It will be proper to refer to several acts of assembly relating to the prisons of Philadelphia city and county, and of the commonwealth, and to the laws changing the punishment of crime, from corporal punishment to hard labour; and it may suffice to say, that the idea is of ancient origin; we find it first in an act of Assembly of 1705, and may, perhaps, safely ascribe its origin to Wm. Penn: after the war oí our revolution, it was revived and extended in its application to many offences; but the convicts laboured on the highways or in other public places, during the day, and were confined in prison only during the night, and then not separated from each other. On the 5th of April, 1790, a law was enacted, which it will be necessary to consult. It is the basis of our present system, or more properly, it is the present system, though, at first, it was not carried into effect according to its spirit; because we had not either experience or suitable prisons. The preamble to that act states, “ Whereas the laws heretofore made for the purpose of carrying the provisions of the constitution (of 1776) into effect, have in some degree failed of success from the exposure of the offenders employed at hard labour, to public view, and from their communication not being sufficiently restrained, within the places of confinement, and it is hoped, that the addition of urn-emitted solitude to laborious employment, as far as it can be effected, will contribute as much to reform as to deter.”
The act then proceeds to direct the length of time, during which persons convicted of the several crimes enumerated, shall be sentenced to be confined and kept at hard labour, and prescribes the manner of feeding and clothing them. It w'as known, that at that time the prisons, in many counties, were not of such construction, either in form or materials, as to be fitted for the purposes of this act, and in the 8th section it was directed, that the commissioners of the county of Philadelphia, with the approbation of the mayor and two aldermen, and two justices of the quarter sessions of the city and county, shall cause to be constructed, in the yard of the jail of the county, a suitable number óf cells of 6 feet in width, 8 feet in .length, and 9 feet in height, &c. &c. and the said cells shall be *441 separated from the common yard by walls of such heighth, as without unnecessary exclusion of light, will prevent all external communication, for the purpose of confining therein the more hardened or atrocious offenders, who by that act have been or shall be sentenced to confinement at hard labour for a term of years.
By section 10 it is provided, that the residue of the gaol shall be appropriated for the purpose of confining as well such male convicts sentenced to hard labour, as cannot be accommodated in the cells, as well as all other prisoners; all of whom are to be kept separate and apart as far as the convenience of the prison will admit.
Section 13, after prescribing the food, clothing, and kinds of labour, in which the convicts are to be employed, proceeds to direct, “ during which labour the said offenders shall be kept separate and apart from each other, if the nature of their several employments' will admit thereof.”
And section 18 prohibits from entering the criminal apartment, all persons except the keeper and assistants, inspectors of the prison, officers of justice, counsel or attorneys • employed by the prisoners, ministers of the gospel, and those to whom two of the inspectors shall giye a written permit.
Now it is most apparent, that under this act the prisoners sentenced to confinement at hard labour, were to be kept separate and apart from each other as far as could be effected — that is, so long as the number of cells was equal to the number of convicts; and where this was not the case, the cells were by this and other acts, appropriated to, or in part to the more hardened and atrocious offenders.
By the 34th section, felons convicted in any county of the state, for which he or she shall be sentenced to hard labour for the space of twelve months or upwards, might, at the discretion of the. Court, be removed to the gaol in thfe county of Philadelphia, &c. &c. .
Though it was afterwards provided, that those sentenced' for two years or upwards, might be removed, yet the number of' offenders soon greatly exceeded the number of cells which were built, or which, for want of room, could be built within the gaol of Philadelphia.
By an act of 22d April, 1794, it was provided, (section 11,) that every person convicted of the crimes enumerated in the 10th section, “ shall be confined in the gaol and penitentiary house aforesaid, and shall be placed and kept in the solitary cells thereof on low and course diet, for such portion of his or her imprisonment as the Court in their sentence shall direct and appoint; provided that it be not more than one half, nor less than one twelfth of the time, and the inspectors of the gaol shall have power to direct the infliction of the said solitary confinement at such intervals, and in such manner as they shall judge best.” Whether this section really extended "to. change the punishment, and indirectly abolish confinement separate and apart during the whole of the period of the sentence; of whe *442 theF, as it was perfectly known,, that every offender could not be kept separate and apart from others, for there were not enough of apartments for the purpose, it provided, that certain offenders convicted of certain specified atrocious crimes, should at all events, spend part of- thé time prescribed by the sentence in the solitary cells, might, admit of tedious discussion; but has become immaterial because, either in’express terms as to many offences, or by implication stronger than is found in this act, it had ceased to have any force before the present sentences’were passed; besides in terms, taking the 10th and 11th sections, together, it only applied to those convicted in and sent from other counties to the prison at Phila-, delphia.
On the 5th of April, 1790, the prison of the city and county of Philadelphia was bounded on Walnut-Street, Sixth-Street and Prune-Street, and after other prisons were erected, was called the Walnut-Street prison; the city and county prison, the old prison, promiscuously; and a part of it appropriated1 to debtors, &c. &c. was called the Pirune-Street apartment of the prison.
In process of time it became necessary to erect other prisons; and one having been commenced on Arch-Street, an act of assembly of 31st March, 1831, was passed, appropriating twenty-five thousand dollars towards completing it; the 2d section provides, that “ immediately after the said prison shall be completed and suitable for the admission of prisoners, the inspectors may, if they think proper, cause to be removed thereunto all or any of the persons convicted of crimes and' misdemeanors, that may be then confined in the prison of the city and county of Philadelphia, and if necessary, to receive into-the said prison from time to time, all persons that shall hereafter be convicted in this commonwealth, and subject to hard labour by the existing laws ira the gaol and. penitentiary of the city and county ©f Philadelphia;” and the said new prison-was thereafter to be theexclusive property of the commonwealth: (this was afterwards changed,' and it became the property of the city and county.) The act of 2d April, 1803, had provided, for the removal of prisoners (not convicts) to the Arch-Street prison; that of 1812 had provided for the removal of prisoners convicted of crime, as soon as the prison was completed for their admission: from some causes the Arch-Street prison was long before it was completed on the original plan ; perhaps it never was so completed, and never may be. On the 15th of March, 1816, an act was passed declaring, “ that the commissioners of the city and county of Philadelphia are hereby authorised to prepare such parts of the now prison in Arch-Street as, may be necessary for the comfortable and safe keeping of such persons as may be confined for debt in the city and county,” and to use the debtors’ apartment in the old prison for convicts.
On the 3d March, 1818, provisions were made for erecting a penitentiary on the public ground in the Town of Allegheny, to be used *443 as a place of confinement for convicts from the western section of the. state: by the 5th section, the inspectors, county commissioners, and others named, are authorised to sell the prison and lots on which it is situated on Walnut and Prune Street. The 6th section declared, that “ whenever a sale of said prison and lots shall have been effected, the inspectors shall, as soon as conveniently may be, cause all persons then confined therein, to be removed to the ,new prison on Mulberry-Street, and there safely kept, fed, clothed, treated and dealt with according to law, and to continue them'therein until duly discharged, or removed to such other penitentiary or prison, as shall be erected for their reception and safe-keeping.” And section 7th authorised the purchase of a suitable lot for a new penitentiary : section 8th authorised the inspectors to erect on the lot so purchased, a new .penitentiary of public prison adapted to the solitary confinement of convicts^
The prisoner was tried and convicted since the .enactment .of this law. The prison on Walnut and Prune Streets has been sold. The prisoner has been removed to thd prison on Arch-Street: a new penitentiary has been erected ; and by the act of 28th March, 1831, (section 6,) it is provided, that the inspectors of the jail and’ penitentiary, on the first Monday in April, 1833, or as soon thereafter as conveniently n¡jay be, shall remove all the convicted criminals, who may remain in the said jail and penitentiary,, to the state penitentiary for the eastern district, there to be imprisoned, kept and punished according to law and- their several sentences, until duly discharged ; with a proviso that the penitentiary be then prepared for their reception. -
Applications to a Court on habeas corpus are made by persons under very different circumstances. A person may apply who is restrained or deprived of bis liberty, without any cause justifying such restraint.; and on this appearing the person is ordered to be discharged. In the present case, the prisoner is confined under a sentence or sentences of a competent Court of record; which sentences are in due form of law, not even complained of; but the application is founded on the allegations, that the prisoner could not have been legally removed to the prison on Arch street. It was not contended and could not be with propriety, that when a prison was too small or too insecure, the Legislature could not authorize the building a new one, and direct the prisoners to be removed to it. There was however, a mistake of fact in supposing there was no law expressly authorising the removal of persons convicted of crime to the Arch street prison. There are at least two express acts on the subject above-cited.
Another ground was taken, viz. that the prisoner is not kept at hard labour; and further, that the prison as it now is, is not adapted to keeping prisoners at hard labour. This then presents the case of a person legally confined, but who alleges he is not legally treated. If the *444 keepers misbehave, by using undue rigour or imposing hardships or severities on the prisoner not authorised by law, they may be pun- , ished by a proper proceeding, before the proper tribunal; or if the misbehaviour consists in undue indulgence, in not imposing on the offender the sentence of the laW, they are answerable for such conduct, unless some justifying cause is shown. But in no case, it is believed, will the mistake or misconduct of the keeper give the criminal a right to a- total discharge from his sentence: it would amount to giving the keeper and inspectors the pardoning power. It would greatly extend the power of this Court; it would give it the power equivalent to pardoning a criminal, for the strange reason that some other person had been either too severe or too indulgent.
The acts of Assembly cited, would seem to be express that all prisoners in the Walnut-street prison should, when it was sold, be removed to Arch street prison, and as soon as the cells in sufficient number were ready for their reception, the convicts should be removed to the Eastern penitentiary. It is not among the facts submitted to us, but it seems to be assumed that it is now completed; and some part of the argument went to the question whether the prisoner could, if sent there, be kept at hard labour, separate and apart from all others — I repeat that this matter' cannot be now legally before us; but I will suggest some considerations which may be useful to those taking an interest in these matters.
It has appeared that by the act of 5th of April, 1790, the Hard labour to which offenders were to be sentenced, was to be performed .separate and apart from each other, so far as the same could be effected or the nature of the labour would admit; The act of 1794, in sections 10 and 11, applies to convicts sentenced in counties other than Philadelphia, and a’pplies to persons convicted of any crime, (other than murder in the first degree,) which now is, or on 15th of September, 1786, was capital or felony of death; or of uttering counterfeit coin of the United States, or of counterfeiting or uttering, or uttering or passing, knowing them to be counterfeit, the notes of the bank of Pennsylvania, bank of North America, or bank of the United States. Now the prisoner is convicted on indictments for passing counterfeit bank notes, and on one for stabbing with intent to kill and murder. The last is not within the act of 1794, it was never capital or felony of death; and the whole law respecting counterfeiting coin, and forging, or passing forged bank notes, was changed by the act of 25th of March, 1824; and the person convicted of this offence is to be sentenced to hard labour for a period not exceeding ten years nor less than one year,fined not exceeding 1000 dollars, and to be kept, treated and dealt with in all respects as other convicts now are, or may hereafter be, by law. The prisoner committed his crimes and was convicted and sentenced after this law was enacted; and is subject to its provisions.
He was then rightly removed from Walnut-street prison to the *445 prison-on Arch-street; and if the Eastern penitentiary is prepared for the reception of convicts, he ought to be removed to it — if there is room — there to be “ imprisoned, kept and punished according to law and his sentence.” But we cannot discharge him, or do what in effect would amount to a remission of his sentence, even if the keepers or inspectors have been remiss in not having'removed him sooner.
Remanded.